## THE UNITED STATES, APPELLANTS, *v.* ANDRES CASTILLERO.

By a special dispatch from the Minister of the Interior, under the order of the Mexican President, dated 20th July, 1838, the Governor of California, with the concurrence of the Departmental Assembly, was authorized to grant the islands near the coast.

See the case of the United States *v.* Osio, reported in this volume.

On the same day, another special dispatch was sent, reserving out of the general grant such island as Castillero might select, and directing a grant to be made to him for it, which was done.

All the signatures being proved to be genuine, and the index of the concession being found in its proper place amongst the Mexican archives, the claim of the grantee must be confirmed.

There was no necessity, in this case, for the concurrence of the Departmental Assembly.

THIS was an appeal from the District Court of the United States for the southern district of California.

The case is stated in the opinion of the court

The claim was confirmed by the board of commissioners, and likewise by the District Court. The United States appealed to this court, where it was argued by *Mr. Stanton* for the appellants.

*United States* v. *Castillero.*

Mr. Justice CLIFFORD delivered the opinion of the court.

This is an appeal from a decree of the District Court of the United States for the southern district of California, affirming a decree of the commissioners appointed under the act of the third of March, 1851, to ascertain and settle private land claims.

Pursuant to the eighth section of that act, the appellee in this case presented his petition to the commissioners, claiming title to the island of Santa Cruz, situated in the county of Santa Barbara, in the State of California, by virtue of an original grant from Governor Alvarado. All of the documentary evidences of title produced in the case are duly-certified copies of originals found in the Mexican archives, as appears by the certificate of the surveyor general, which makes a part of the record. They consist of a special dispatch from the Minister of the Interior of the Republic of Mexico, addressed to Governor Alvarado; the petition of the claimant to the same, and the original grant to the petitioner, which purports to be signed by the Governor, and to be duly countersigned by the secretary of the Department. Certain other documents were also introduced, to which it will be necessary to refer, as a part of the proceedings that led to the grant.

Islands situated on the coast, it seems, were never granted by the Governors of California or any of her authorities, under the colonization law of 1824, or the regulations of 1828. From all that has been exhibited in cases of this description, the better opinion is, that the power to grant the lands of the islands was neither claimed nor exercised by the authorities of the Department prior to the twentieth day of July, 1838, as was satisfactorily shown in one or more cases heretofore considered and decided by this court.

On that day, the Minister of the Interior, by the order of the Mexican President, addressed a communication to Governor Alvarado, authorizing him, in concurrence with the Departmental Assembly, to grant and distribute the lands of the desert islands adjacent to that Department to the citizens of the nation who might solicit the same. That dispatch bears date at a period when the President was in the exercise of

extraordinary powers, and was issued, as appears by its recitals, with a view to promote the settlement of the unoccupied islands on the coast, and to prevent those exposed positions from becoming places of rendezvous and shelter for foreign adventurers, who might desire to invade that remote Department. Grants made by the Governor, under the power conferred by that dispatch, without the concurrence of the Departmental Assembly, were simply void, for the reason that the power, being a special one, could only be exercised in the manner therein prescribed. It was so held by this court in United States *v.* Osio, decided at the present term, and we are satisfied that the decision was correct.

But the grant in this case was not made under the general authority conferred by that dispatch. In addition to what was exhibited in the former case, it now appears that another dispatch of a special character was addressed by the same Cabinet Minister to the Governor on the same day. Like the other, it bears date at the city of Mexico, on the twentieth day of July, 1838, and is signed by the Minister of the Interior. By the terms of the communication, the Governor is informed that the President, regarding the services rendered by this claimant to the nation and to that Department as worthy of great consideration and full recompense, has directed the Minister to recommend strongly to the Governor and the Departmental Assembly that one of the islands, such as the claimant might select, near where he ought to reside with the troops under his command, be assigned to him, before they proceed to grant and distribute such lands, under the general authority conferred by the previous dispatch.

Beyond question, the legal effect of that second communication was to withdraw such one of the islands as should thus be selected by the claimant from the operation of the previous order, and to direct that it be assigned to this claimant. His attorney, accordingly, on the fifth day of March, 1839, presented his petition to the Governor, asking for a grant of the island of Santa Catalina, which is situated in front of the roadstead of San Pedro, and requested that the expediente might pass through the usual forms.

In conformity to the prayer of the petition, the Governor, on the same day, made a decree that a title of concession should issue, and that the expediente should be perfected in the usual way. Accompanying the order of concession there is also a form of a grant of the island to the claimant; but it is without any signatures, and does not appear ever to have been completed.

On the seventeenth day of March, 1839, his attorney in fact presented another petition to the Governor, asking for a grant of the island of Santa Cruz, which, as he represents, is situated in front of Santa Barbara, on the coast of that Department.

Both of these petitions are based upon the special dispatch addressed to the Governor; and in the one last presented, the claimant represents that the island previously offered is wholly unfit either for agricultural improvement or the raising of stock, and for that reason prays, in effect, that the order of concession may be so changed as to conform to his last-mentioned request. For aught that appears to the contrary, his request was acceded to without hesitation, for, on the twenty-second day of May, 1839, the Governor made the grant, basing it upon the special dispatch referred to in the petition.

To prove the authenticity of the dispatch and the genuineness of the grant, the petitioner called and examined Governor Alvarado. He testified that he was acquainted with the handwriting of Joaquin Pesado, the Minister of the Interior, and also with that of Manuel Jimeno, the secretary of the Department, who countersigned the grant. Both of these signatures, as well as his own, he testified were genuine; and he also stated that he recognised the document as a genuine instrument, and intended it at the time as a perfect and complete title in the claimant. His testimony finds support in this case, to some extent, by the fact that all the documentary evidences of title, inlcuding the grant, were found in the Mexican archives; but much stronger confirmation of his statements is derived from the record evidence which those archives are found to contain.

At the argument, we were very properly furnished by the counsel of the appellants with a copy of an index of conces-

sions, prepared by the secretary of the Department. That index covers the period from the tenth day of May, 1833, to the twenty-fourth day of December, 1844. It contains a list of four hundred and forty-three concessions, and among the number is the one set up by the claimant in this case. Its description in the index corresponds in all particulars with the grant produced, except as to the date. As there given, it is dated the fifth day of March, 1839, which is the true date of the concession, under the first petition.

Considering that the name of the grantee and the description of the premises agree with the grant produced in the case, we think it a reasonable presumption that the error of date is in the index, and not in the grant. For these reasons, we think the genuineness of the documentary evidence of title is satisfactorily proved. Having come to this conclusion, the only remaining question is, whether the grant was made by competent authority. Direction was given to the Governor and the Departmental Assembly in the special dispatch on which this grant was issued, that one of the islands, situated along the coast of the Department, should be assigned to this claimant before they proceeded to grant and distribute such lands under the general order. Those communications were of the same date; but it is obvious, from the language of the special dispatch, that it was issued subsequently to the other communication, and must be regarded as qualifying the latter, so far as their terms are repugnant. Had the claimant petitioned for a grant of this description, under the general order, his application would have been addressed to the discretion of the Governor and of the Departmental Assembly; and unless both had concurred in granting the prayer, his application would have been defeated, for the reason that such a title could only be adjudicated by their concurrent action. Power to refuse such applications was vested in the Assembly as well as in the Governor; but when both concurred, and the adjudication had been made, the title papers were properly to be issued by the Governor as an executive act. As the Assembly was a constituent part of the granting power under the general order, it was doubtless thought proper that the withdrawal of

one of the islands from its operation, and the disposal of it in another way, should be notified to the Assembly as well as to the Governor. They were accordingly directed not to proceed to make adjudications under that order until the assignment of the title to this claimant was perfected, but they were not required to make the assignment or to cause it to be made. To accomplish that purpose, and carry into effect the command of the President, two things only were necessary to be done: one was to be performed by the claimant, and the other was a mere ministerial act. It was the claimant who was to make the selection; and if it was a proper one, near the place where he was stationed with his troops, nothing remained to be done but to make the assignment as described in the dispatch. Emanating as the dispatch did from the supreme power of the nation, it operated of itself to adjudicate the title to the claimant, leaving no discretion to be exercised by the authorities of the Department. Neither the Governor nor the Assembly, nor both combined, could withhold the grant, after a proper selection, without disobeying the express command of the supreme Government. Nothing therefore remained to be done, after the selection by the claimant, but to issue the title papers, and that was the proper duty of the Governor, as the executive organ of the Department. No doubt appears to have been entertained of the justice of the claim, either by the commissioners or the District Court; and in view of all the circumstances, we think their respective decisions were correct. The decree of the District Court is therefore affirmed.